UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FOREMOST INSURANCE COMPANY,

    Plaintiff,

    v.

LEE THORSON, et al.,

    Defendants.

CASE NO. 07-0243-JCC

ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. Nos. 20 & 22), Plaintiff's Opposition (Dkt. No. 23), and Defendants' Reply (Dkt. No. 26), together with supporting affidavits and exhibits.[1] Having considered the papers submitted by the parties, and finding oral argument unnecessary, the Court hereby DENIES Defendants' motion, as follows.

**I.   BACKGROUND**

*A.   The Collision*

In July 2006, Defendant Kirk Thorson, then a student at Whitman College, was home for the summer, living with his parents in Kirkland. (Thorson EUO 5:13–25 (Dkt. No. 21-2 at 43).) Mr. Thorson

---

[1] Plaintiff also filed a "Surreply to Plaintiffs' [*sic*] Reply," (Dkt. No. 28), but did not comply with the Local Rule governing surreplies. LOCAL RULE CR 7(g). As such, Plaintiff's submission was not considered by the Court in ruling on this motion.

ORDER – 1

spent much of the late afternoon and evening of July 24 with friends on his family's boat in Lake Washington. In an Examination Under Oath ("EUO"), Mr. Thorson acknowledged drinking "a couple beers" while on the boat that day. (*Id.* at 12:2. (Dkt. No. 21-2 at 50).) He had also brought along chips, salsa and fruit. (*Id.* at 14:22–24 (Dkt. No. 21-2 at 52).) By his estimate, it was probably around sunset when he began heading back, first, to drop off his friends, and then to take the boat home. (*Id.* at 12:15–18, 15:4–10 (Dkt. No. 21-2 at 50, 53).) Unfortunately, he did not make it home without incident that night. Sometime around 10:00 p.m., the boat Mr. Thorson was operating collided with a boat owned by Defendant Colin Bogle. Mr. Bogle's boat was moored in Juanita Bay when it was hit, not far from the Thorson home. (*See* Incident Rpt. (Dkt. No. 21-2 at 66).) Witnesses reportedly saw a boat traveling fast shortly before the collision. (Incident Supp. Rpt. (Dkt. No. 24-2 at 4).) King County Patrol Deputies that responded to the scene reported that they contacted Mr. Thorson, who informed them that he had been in an accident with another boat, but was okay. (Incident Rpt. (Dkt. No. 21-2 at 66).) They then watched Mr. Thorson get into the water and tow the boat (by swimming while pulling a line) to its moorage place. (*Id.*) Officers who boarded the boat not long thereafter noted "evidence that someone had vomitted [*sic*] all over the boat," but that "[t]here were no signs of alcohol on the boat that we could see." (*Id.*)

At least two officers who spoke with Mr. Thorson that night reported that they smelled the odor of an alcoholic beverage on his breath or his person. (*See* Incident Supp. Rpts. (Dkt. No. 24-2 at 4, 5).) One of those officers gave Mr. Thorson a field sobriety test, which he reportedly failed. (*Id.* at 5; BUI Arrest Rpt. - Sobriety Tests (Dkt. No. 24-2 at 9).) Mr. Thorson also took a preliminary breath test, which reported his blood alcohol content ("BAC") to be .093. (BUI Arrest Rpt. (Dkt. No. 21-2 at 69).) He was arrested for Operation of a Vessel Under the Influence of Intoxicating Liquor, WASH. REV. CODE 79A.60.040, a misdemeanor commonly referred to as "Boating Under the Influence" ("BUI"). (*See* Dkt. No. 24-2 at 3.) Later that night, Mr. Thorson took a second breath test, this time the testing device reported a BAC reading of .104 on the first sample and .110 on the second. (BUI Arrest Rpt. (Dkt. No. 24-2 at 6).)

ORDER – 2

### B.     The Tongue Ring

Defendant argues that the results of the breath tests may have been corrupted by the presence of Mr. Thorson's galvanized tongue ring, which was noted on the first BUI Arrest Report, but apparently not removed prior to testing. (*See* Dkt. No. 21-2 at 69.) Under Washington law, proper breath test procedures require the removal of any foreign substances from the testee's mouth within fifteen minutes prior to administering the test. *See* WASH. REV. CODE 46.61.506(4)(a)(iii). The state regulations specifically identify a tongue ring as a "foreign substance" that must be removed prior to testing: "If a subject is wearing jewelry or ornamentation pierced through their tongue . . . , they will be required to remove this prior to conducting the breath test." WASH. ADMIN. CODE 448-16-040(2). "Compliance with approved breath test procedures is a condition precedent to admission of the test results." *City of Seattle v. Allison*, 59 P.3d 85, 87 (Wash. 2002) (citing *State v. Baker*, 355 P.2d 806 (1960)).

### C.     The Consequences of the Collision

Mr. Thorson was charged with a BUI, but that charge was later amended to Operation of a Vessel in a Negligent Manner, which is classified as an infraction. WASH. REV. CODE 79A.60.030. Mr. Thorson apparently paid a $500 fine associated with that infraction. (*See* Thorson EOU 22:9 (Dkt. No. 21-2 at 60).)

At the time of the accident, the Thorsons' boat was insured under a policy issued by Plaintiff Foremost Insurance Company ("Foremost"). (*See* Compl. ¶ 15 (Dkt. No. 1).) The policy was issued in the name of Mr. Thorson's father, Lee Thorson (Watercraft Insurance Identification Card (Dkt. No. 25-2 at 22), and repeatedly uses the phrase, "You, Your and Yours," which is internally defined to mean: "With respect to your watercraft, the person named on the Declarations Page and that person's family member." (Dkt. No. 25-2 at 28.) The definition of "Family Member" includes, "[a] person who resides in your household and is related to you by blood, marriage or adoption[.]" (Dkt. No. 25-2 at 28.) The policy excludes from its property coverage "loss caused directly, indirectly or resulting from . . . [a]n illegal activity . . . conducted by any of you or with the knowledge of any of you." (Dkt. No. 25-2 at 31.)

ORDER – 3

Similarly, the policy excludes from its personal liability coverage "[b]odily injury or property damage arising out of the illegal acts of any of you." (Dkt. No. 25-2 at 37.)

Foremost filed this action in February 2007 seeking declaratory judgment that it has no duty to provide coverage for any damages resulting from the July 24, 2006 collision. (Compl. 5 (Dkt. No. 1).) Foremost cites the policy's aforementioned exclusions[2] and contends that the collision was "a result of Kirk Thorson's illegal acts, namely operating a vessel while under the influence of alcohol." (*Id*. at ¶¶ 17–18, 24.)

### D.   *The Counterclaim and Motion for Summary Judgment*

The Thorson Defendants counterclaimed, alleging, *inter alia*, that Foremost acted in bad faith and engaged in unfair practices when responding to insurance claims related to the collision. (Answer 4–6 (Dkt. No. 8).) Defendants' counterclaims are largely based in their contention that Foremost made its decision to deny coverage because of the breath tests, which would have been inadmissible at trial.[3] WASH. REV. CODE 46.61.506(4)(a). Defendants argue that "Foremost Insurance's continued reliance on these invalid tests is bad faith *per se.*" (Defs.' Mot. 10 (Dkt. No. 20).)

Defendants seek summary judgment, requesting:

> an order . . . (a) denying the plaintiff's declaratory relief herein, (b) ordering coverage under the insurance policy, and (c) allowing damages in tort (including general damages, economic "out-of-pocket" expenses, lost use damages and attorney fees), arising from the violation of the insurance laws and regulations by the insurer, and statutory damages (including exemplary damages and

---

[2] Although Defendants also argue that the policy's exclusion for "intentional acts" from personal liability coverage does not apply (Defs.' Mot. 4 (Dkt. No. 20)), Foremost does not offer this exclusion as grounds for denial of coverage in the Complaint, thus, its applicability is not properly before the Court.

[3] Defendants neglect to address language in this statue that specifies "the prosecution or department" as those who may make a prima facie showing on which a breath test might be admissible. WASH. REV. CODE 46.61.506(4)(a) ("A breath test . . . shall be admissible at trial or in an administrative proceeding if the prosecution or department produces prima facie evidence of the following: . . . "). As discussed *infra*, the Court does not decide whether this statute similarly forbids an insurance company from making a policy decision based upon a breath test; however, the Court agrees with Foremost that the statute's specific identification of "the prosecution or department" certainly provides an argument that the statute may not apply to all actors.

ORDER – 4

attorney fees) pursuant to [Washington Revised Code] 19.86.090.

(*Id.* at 20.) Foremost opposes Defendants' motion, arguing that there are genuine issues of material fact that preclude resolution of the parties' claims on summary judgment.

## II.   LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial in order to survive summary judgment. *Anderson*, 477 U.S. at 250.

## III.   ANALYSIS

### A.   *The Meaning of "Illegal Activity" or "Illegal Acts"*

The policy does not include a definition for either "illegal act" or "illegal activity," and the parties fail to adequately brief the issue of how to construe these undefined terms. For example, in its Opposition, Foremost states decidedly, "[i]llegal acts are illegal acts, whether or not they result in convictions" (Pl.'s Opp. 18 (Dkt. No. 18)) but unhelpfully provides no legal argument or authority for this assertion. Similarly, the underlying assumption of Defendants' urged dichotomy—that "negligent" conduct can never be "illegal" conduct (which Defendants seem to think is synonymous with "criminal" conduct)—is certainly not accurate. *See, e.g.*, WASH. REV. CODE 9A.08.010(d) (defining "criminal

ORDER – 5

1  negligence"). Defendants' argument that a non-criminal statutory violation cannot be the basis for
2  denying coverage is also not on point. (*See* Defs.' Mot. 14 (Dkt. No. 20).) The Court understands
3  Foremost's argument to be that it is denying coverage because there is evidence that Mr. Thorson
4  violated the law by operating a vessel while he was intoxicated, not that it is denying coverage because he
5  paid a fine for an infraction related to that incident.

6  Due to the parties' failure to adequately brief the issue, the Court declines, at this time, to
7  determine the appropriate meaning and scope of the word "illegal" as it is used in the policy. Questions,
8  therefore, remain whether, for example, "illegal" activity encompasses only violations of criminal statutes,
9  and if so, an insured's act only becomes "illegal" upon conviction, or if an insurer may make an
10 independent determination that an insured's conduct ran afoul of the law, regardless of conviction, or
11 even arrest. *See, e.g.*, BLACK'S LAW DICTIONARY 763 (8th ed. 2004) (defining "illegal" as "*adj.*
12 Forbidden by law; unlawful").

13  *B.    Collateral Estoppel*

14  Defendants contend that Foremost should not be permitted to argue Mr. Thorson's conduct was
15 "illegal," because the charge against Mr. Thorson was reduced from a criminal misdemeanor—BUI—to a
16 non-criminal infraction, "Operating a Vessel in a Negligent Manner." Defendants argue that the reduction
17 serves as a judicial determination that the collision resulted from negligence, and that Foremost may not
18 otherwise "arbitrarily" decide that Mr. Thorson's conduct was "illegal." (*See* Defs.' Mot. 11 (Dkt. No.
19 20).)

20  As discussed above, the Court is not convinced that the terms "illegal" and "negligent" are
21 mutually exclusive. Even if they were, Defendants' argument that the reduction of the charges against
22 Mr. Thorson served as a "judicial determination [resulting] in a *finding* of negligence," (*id.*) (emphasis in
23 original), is without merit. Under Washington law, a party seeking to invoke the doctrine of collateral
24 estoppel must prove the following:

25  (1) the issue decided in the prior adjudication is identical with the one presented in the second
26 ORDER – 6

action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Shuman v. Dept. of Licensing*, 32 P.3d 1011, 1013–14 (Wash. App. 2001) (quoting *Thompson v. Dep't of Licensing*, 982 P.2d 601 (1999)). Defendants do not appear to have the better part of the argument on *any* of these required elements of proof. Most fundamentally, Defendants offer no support for their implied argument that a negotiated plea agreement qualifies as an "adjudication." Although Defendants' motion repeatedly refers to "the criminal proceeding" or "criminal action" in which Mr. Thorson was allegedly adjudged to have been negligent, Defendants present no evidence that there was *any* hearing on the matter; in fact, Defendants appear to acknowledge that the decision to reduce the charge was made by the prosecutor's office on its own, not after a hearing where a judicial officer or an arbitrator weighed the evidence and made a determination on the merits. (*See* Defs.' Mot. 13 (Dkt. No. 20) ("The State investigated the circumstances surrounding his accident and made a negligence determination based on the evidence available.").)

Even if collateral estoppel were applicable where the issue sought to be precluded was previously decided by executive actors behind closed doors, Defendants' argument that the State declined to prosecute Mr. Thorson on the BUI charge because a case could not be made for that charge is pure speculation. Defendants argue that, because the breath tests could not be used as evidence at trial, Mr. Thorson could not have been prosecuted for a BUI. However, the BUI statute provides for four *alternative* means of proving the offense—evidence of a BAC of 0.08 or more as determined by a breath test is only one of these. *See* WASH. REV. CODE 79A.60.040(2)(a)–(d).[4] Thus, invalidity of the breath tests does not make it a foregone conclusion that the State would have been unable to prove that Mr.

---

[4] Interpreting the BUI statute as providing alternative means of proving the offense is consistent with the manner in which Washington courts have treated the similarly worded and structured Driving Under the Influence statute. *See* WASH. REV. CODE 46.61.502; *see also e.g.*, *State v. Shabel*, 976 P.2d 153, 156 (Wash. App. 1999).

ORDER – 7

Thorson violated the BUI statute. Prosecutors make charging decisions for all kinds of reasons, many of which have nothing to do with their ability to make their case. The Court will not presume that lack of evidence was the reason that Mr. Thorson's charge was negotiated.

Perhaps more importantly, Defendants cannot credibly argue that Foremost either was in privity with whoever in the prosecutor's office negotiated the charge, or had a right or opportunity to intervene in any negotiations. *See, e.g.*, *Fisher v. Allstate Ins. Co.*, 961 P.2d 350, 355 (Wash. 1998) (upholding the relaxed privity requirement applied in *Finney v. Farmers Ins. Co.*, 586 P.2d 519 (Wash. App. 1978), *aff'd* 600 P.2d 1272 (Wash. 1979), but cautioning "the *Finney* rule binds an insurer to a judgment . . . *only* if the insurer has been afforded notice and an opportunity to intervene in the underlying action.") (emphasis added). Defendants' conclusory statement that "an insured and insurer are in 'legal' privity," (Defs.' Mot. 13 (Dkt. No. 20)) misunderstands both the cases cited and the workings of our criminal justice system.

### C. *Credible Evidence of an "Illegal" Act or Activity*

Defendants also argue that Foremost's claim must fail as a matter of law, because "there is no credible evidence that Kirk Thorson was in violation of the *legal blood alcohol limits* for operating a boat in the State of Washington." (Defs.' Mot. 2 (Dkt. No. 20)) (emphasis added). As noted above, Defendants appear to misread the BUI statute. It makes operation of a vessel *while under the influence of intoxicating liquor* illegal; breath test evidence of a BAC of 0.08 or higher is one means of proving the offense, but it is not the only means. The relevant portion of the statute reads:

> It shall be a violation for a person to operate a vessel while under the influence of intoxicating liquor or any drug. A person is considered to be under the influence . . . if:
> (a) The person has 0.08 grams or more of alcohol per two hundred ten liters of breath, as shown by analysis of the person's breath made under RCW 46.61.506; *or*
> (b) The person has 0.08 percent or more by weight of alcohol in the person's blood, as shown by analysis of the person's blood made under RCW 46.61.506; *or*
> (c) The person is under the influence of or affected by intoxicating liquor or any drug; *or*
> (d) The person is under the combined influence of or affected by intoxicating liquor and any drug.

ORDER – 8

1   WASH. REV. CODE 79A.60.040(2) (emphasis added).

2      Even assuming—without deciding—that it would be impermissible for Foremost to consider the breath tests in making a coverage determination, the Court disagrees with Defendants that there is "no other evidence" upon which Foremost could have based its decision that Mr. Thorson was intoxicated at the time of the collision. Foremost lists some of this potential "other evidence" in its Opposition:

> First, Thorson was observed operating his boat in a reckless manner immediately before the accident. Second, Thorson collided with a moored boat. Third, Thorson jumped into the water and attempted to swim toward the shore, away from the responding officers, with a boat in tow. Fourth, officers observed vomit in Thorson's boat. Fifth, Officer McKinney reported Thorson smelled strongly of alcohol less than an hour after the accident occurred. Sixth, Thorson failed the field sobriety tests.

(Pl.'s Opposition 12 (Dkt. No. 23).)

      While Defendants may certainly argue that there are alternative explanations for Foremost's proffered evidence (*e.g.*, Defendants argue the alleged "vomit" was actually salsa, misidentified by the officers who boarded the boat at night and assessed its condition with the aid of flashlights), the Court is unable to find that the other evidence of intoxication is so thin as to warrant summary judgment against Foremost. Similarly, the Court declines to grant summary judgment based on Defendants' argument that any alleged reliance on other evidence of intoxication is disingenuous, because claims personnel stated in depositions that the only evidence Foremost had of Mr. Thorson's alleged intoxication was the breath test results. Specifically, Defendants point to the following exchanges:

> Q.    Now, do you have any evidence to suggest that Mr. Thorson drank any more than three to four beers from 4:45 in the afternoon to 10 o'clock at night?
> A.    The only evidence we have is the blood alcohol content report.
> Q.    And if that's invalid, then you don't have any other evidence that he drank any more than those few beers, correct?
> A.    Yes, sir.

(Henry Reiser Dep. 39:18–40:5 (Dkt. No. 21-2 at 78).)

> Q.    Other than the police report of the breathalyzer being in excess of the limit in Washington, you don't have any other evidence that you know that Mr. Thorson was boating under the influence, correct?
> A.    I'm aware only of the .104.

ORDER – 9

(Neil Selah Dep. 44:12–17 (Dkt. No. 21-2 at 102).) Defendants' Reply also cites Colin Wheeler's deposition, however, the Court was unable to determine exactly what portion of that deposition Defendants meant to cite, because the cited pages were not within the range of pages provided in the attached deposition. If the Court were to guess which portion of the deposition Defendants meant to point to, its best guess would be the following exchange:

> Q. Do you have any evidence, as we sit here today, that Mr. Thorson was under the influence of alcohol in excess of .08 on the night of July 24, 2006?
> A. The blood alcohol report that was reported by the police department was that he was over that limit, that he was arrested and charged for that offense.
> Q. Do you believe that that is evidence that you can rely on to deny coverage in this case?
> A. Based on the advice of counsel, it appears that it is, yes.

(Colin Wheeler Dep. 82:18–83:7 (Dkt. No. 21-2 at 91).) The Court notes, however, that Mr. Wheeler goes on immediately to list "other things . . . that suggest that he had been drinking more than he should have been," (*id*. 83:19–21), including Mr. Thorson's jumping into the water and towing the boat, and the fact that police observed what they thought was vomit on the boat. (*Id.* 84:1–86:2.)

The above quoted deposition testimony may prove valuable to Defendants, particularly for impeachment purposes at trial, but the Court cannot find that it suffices to demonstrate that the facts in this case are "so one-sided" that Defendants "must prevail as a matter of law." *Anderson*, 477 U.S. at 252. In particular, Mr. Wheeler's testimony at least rebuts Defendants' argument that Foremost did not consider evidence of intoxication other than the breath tests in making its coverage decision.

### D. *Counterclaim*

Many of the arguments Defendants make in support of their counterclaim are the same or closely related to those addressed above. For example, as evidence that Foremost engaged in bad faith insurance practices in violation of Washington law, Defendants contend: "There is no proper evidence of 'illegal' activity on which the plaintiff can rely or could have relied to justify its non-committal verbiage regarding coverage[.]" (Defs.' Mot. 17 (Dkt. No. 20).) The same problems discussed above persist—namely, it is unclear how the policy's use of the term "illegal" should be interpreted, and the other, non-breath test

ORDER – 10

evidence of intoxication is not so insubstantial to justify a finding on summary judgment that Foremost could not have relied on it in making its coverage decision. In addition, Foremost disputes Defendants' argument that Foremost was not in fact "still investigating" the claim as of January 22, 2007. (*See* Pl.'s Opp. 17 (Dkt. No. 23).) Based on the disputed facts specific to the coverage determination and the significant overlap between the arguments Defendants make in support of their counterclaim and the other issues discussed in this Order, summary judgment on Defendants' counterclaims is inappropriate at this time.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment. (Dkt. Nos. 20 & 22.)

SO ORDERED this 7th day of February, 2008.

*[signature]*

John C. Coughenour
United States District Judge

ORDER – 11